IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CYNTHIA LYNN GUSTAFSON,

                      Plaintiff,

    v.

ANDREW M. SAUL
COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

OPINION AND ORDER

20-cv-467-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Cynthia Lynn Gustafson is seeking review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under the Social Security Act. 42 U.S.C. § 405(g).  She contends that she has been disabled since January 6, 2017 because of degenerative disc disease, bilateral degenerative joint disease of the knees, obesity, migraines, fibromyalgia, and bursitis.  The administrative law judge (ALJ) hearing the case found that plaintiff had severe physical impairments, but could still perform sedentary work in the national economy as a cashier I, bookkeeper.

      Plaintiff contends that the ALJ's analysis was legally deficient because he did not give sufficient weight to plaintiff's problems with her neck, her headaches, and her other physical problems, and did not take into account what she says was her inability to sit for more than 30 minutes at a time.  After considering these arguments, I find them unpersuasive and conclude that the ALJ's decision should be sustained.

1

The following facts are drawn from the administrative record, (AR).

FACTS

A. Social Security Application

Plaintiff filed for disability insurance benefits in November 2017, alleging disability as of January 6, 2017. She met the insured status requirements of the Social Security Act through September 30, 2021 and had not engaged in substantial gainful activity since January 6, 2017. The Social Security Administration denied her claim initially and upon reconsideration. She then requested a hearing, which the ALJ held on March 18, 2019. He then filed his written decision denying her application for benefits. AR 14-23.

B. Plaintiff's Medical Records

The record contains evidence of plaintiff's visits to various medical providers for her physical problem from 2017 to early 2019. An October 2017 examination by Michael Damroth, M.D., showed that plaintiff had a normal range of motion in her neck, some tenderness over her lumbar spine as well as in her sacroiliac joints bilaterally, good lumbar range of motion, and recurrent right greater trochanteric bursitis for which the doctor gave her injections in her hip in May, July and November 2017. AR 302-05, 309-12, and 326.

Advanced Practice Nurse Prescriber Melissa Wiese began seeing plaintiff in January 2018. AR 418. She noted that plaintiff complained of pain and stiffness in her joints and muscles, but walked with a steady gait. AR 420. Plaintiff told Wiese that she struggled with

her weight.

In February 2018, anesthesiologist Dr. Stephen Endres found that plaintiff had equal and symmetrical deep tendon and ankle reflexes; an intact gross strength exam; x-ray imaging that revealed osteoarthritis; a stabbing pain in her thoracolumbar junction when she bent, twisted, or turned; pain in her lumbosacral junction; and pain over her sacroiliac joint that started in her back and radiated to the front.  AR 352.  He gave her trigger point injections in the thoracolumbar junction (the joint between the 12th thoracic vertebra and the first lumbar vertebra), AR 353, in February and again in August 2018.  AR 1308-09.

In March 2018, plaintiff saw APNP Weise, complaining of her right knee giving out. AR 429.  X-rays showed very mild degenerative changes at the medial joint compartment and mild-to-moderate degenerative changes of the patellofemoral joint (the meeting place of the back of the knee and the femur at the front of the knee).  AR 433.  Weise advised plaintiff to continue with non-steroidal anti-inflammatory drugs (NSAIDs), and to use a support brace.  Id.  AR 432.

In May 2018, plaintiff told Weise that she was experiencing a new kind of headache. AR 436. She said that she had a history of both migraines and cluster headaches but had not struggled with headaches since she had a hysterectomy in 2002.  AR 436. Weise observed that plaintiff walked with a steady gait, had joint swelling, and pain with palpitation in the right mediolateral femur tibia joint radiating through the first right quad muscle.

In August 2018, APNP Weise reported that plaintiff continued to complain of low back pain limiting her ability to sit, stand, walk, and perform daily activities.  AR 1306.

3

Plaintiff's spinal examination showed no tenderness over her spine, no joint deformity, intact circulation, motion, and sensation bilaterally. Id. Weise encouraged plaintiff to look into physical therapy, and increased the Citalopram she was taking, after noting that plaintiff had a persistent depressive disorder. Id.

In September 2018, Dr. Endres saw plaintiff again and took x-ray images. AR 1310. The results showed no acute abnormality in plaintiff's overall normal alignment in either her thoracic or her lumbar spine, and no substantial canal or forminal narrowing in the lumbar spine. Id.

In October 2018, APNP Weise found that plaintiff had neck and back pain, shoulder weakness, fatigue, headaches, difficulty sleeping, and lack of pleasure with activities. AR 479-80. Again, Wiese recommended an exercise program for plaintiff's back pain. In December 2018, Weise noted that plaintiff reported sleepiness, joint and spinal pain, and weakness. AR 1334-35.

Also in December 2018, neurologist Dr. David Nye assessed plaintiff as having a gait disorder, possible polyneuropathy, chronic migraines, and a family history of multiple sclerosis. AR 1356. He found plaintiff's range of motion in her neck and hips moderately limited in all directions, with pain "at the extremes of the directions." Id. Plaintiff told the doctor that she had headaches on more days than not and had had them for many years, along with fatigue, abdominal pain, leg swelling, back and joint pain, muscle pain, stiffness, and excessive daytime sleepiness. AR 1349. In January 2019, Dr. Nye reviewed an MRI of plaintiff's brain and noted probable indications of areas likely to be chronic, small vessel

ischemia, AR 1357, but he did not explain the significance of that finding in the record.

In January 2019, Dr. Timothy White, a neurologist, saw plaintiff for the purpose of providing a second opinion on her complaints of headache, neck pain, sleep problems, and her concern that she might have multiple sclerosis, as one of her sisters did. He found that plaintiff had brisk and symmetric reflexes in her arms and legs, was able to stand and walk unassisted, and could stand on her heels and toes. AR 1364. He reviewed the MRI of her brain and told her the findings were consistent with her history of hypertension and migraines. Id. Plaintiff told him she had pain, joint swelling, and stiffness in her joints, as well as weakness in her arms and legs, and loss of balance. AR 1362. Dr. White told her that the findings were more consistent with arthritis than with multiple sclerosis.

To allay plaintiff's concerns about having multiple sclerosis, Dr. White arranged for her to undergo an MRI. After reading the results, he told plaintiff in February 2019 that the MRI findings were normal, with the exception of "central disc protrusion extending into both proximal foraminal producing at least mild bilateral foraminal stenosis, with minimal spinal stenosis noted." AR 1366.

In February 2019, after treating plaintiff for approximately one year, APNP Weise responded to an inquiry from a law office about plaintiff's physical limitations, saying that plaintiff could not lift or carry more than 10 pounds because of her chronic pain, migraines, and fibromyalgia. AR 1369. She noted that plaintiff had fibromyalgia, and migraines. Id. She added that she was not comfortable stating that plaintiff's current health status was "expected for the future." Id.

5

### C. Mental Impairments

Plaintiff complained of depression, anxiety, and panic attacks. At her hearing before the ALJ, she testified that her panic attacks occurred when she could not sleep or when she was under a lot of stress, as she was when her mother died and when she had to put her father in a nursing home. AR 45. She did not see anyone for her panic attacks, but she took Citalopram on a daily basis for her anxiety and depression. AR 44-45.

### D. Medical Opinions from Non-Examining Sources

In March 2018, Disability Determination Services' doctor Pat Chan, M.D., reviewed plaintiff's medical record and found that plaintiff was not disabled but capable of a full range of light work. AR 60-61. It was his opinion that one or more of the medically determinable impairments of her neck, back, and right arm caused her pain and other symptoms, but that her reports of the severity of her pain were not consistent with the medical findings. Id.

A second DDS doctor, Sai Nimmagadda, M.D., reviewed plaintiff's records in July 2018 and also concluded that plaintiff was capable of light work, with certain exceptions: she could frequently climb stairs and ramps, and could balance, kneel crouch, crawl, and occasionally climb ladders/ropes/ scaffolds. AR 76-77. Dr. Nimmagadda added that plaintiff should avoid concentrated exposure to extreme cold, vibration, and hazards but she could sit with normal breaks for a total of six hours in an eight-hour day; and frequently lift and carry 10 pounds. Id. As the ALJ pointed out, Dr. Nimmagadda's opinion was somewhat more restrictive than Dr. Chan's, but both doctors noted plaintiff's normal gait,

as well as the degenerative changes in her spine and knee and her obesity.

Deborah Pape, Ph.D., and Kiela Bolden, Psy.D., both determined that plaintiff had mild limitations in the mental health criteria, with one exception: Dr. Pape found no limitation for plaintiff in the criterion of interacting with others and Dr. Bolden found a limitation in the same criterion. AR 58-61, AR 74. The ALJ found their opinions consistent and supported by plaintiff's controlled symptoms, her ability to perform most daily activities, and her controlled symptoms. AR 21-22.

### E. Administrative Hearing

At the administrative hearing before the ALJ in this case, plaintiff testified that she was 58 years old, 5'4', and weighed 245 pounds. AR 33. She reported having had gastric banding surgery in an effort to reduce her weight, but the surgery had not resulted in the long term weight loss she had hoped for. As of January 2018, her body mass index (BMI) was 47.

Plaintiff testified that she had headaches "quite a bit," but that they were not always migraines, and that she took Tylenol for them. Plaintiff testified that she had one to two migraine headaches every month, each of which could last a couple of days, and that she took only Tylenol for them as well. AR 41-42. She also took Tylenol for muscle relaxation every day and found it helped ease the muscles in her neck. AR 39. She said that her pain was mostly in her neck but it could also be in her hip or in her back. Id.

Plaintiff said she had a hard time turning her neck in either direction, AR 34, that

sitting was her most comfortable position, but that she could sit for only 30 minutes at a time. AR 39-40, 47. Sh, could stand ten to 15 minutes before needing to sit again, walk continuously for only 15 minutes, and lift and carry ten pounds. AR 39-40. She spent her time watching television, crocheting, and using her computer. AR 45, 48. She said she also had back and hip problems, AR 39, knee problems, difficulty walking for any distance, and the mental impairments of depression, anxiety, and panic attacks. AR 44. She also had high blood pressure that was treated with medicine. Id.

Plaintiff said she had worked previously for Farm & Fleet in three capacities: first as a cashier, then as department head of children's clothing, AR 36, and then as a bookkeeper. AR 37. As a department head, she kept track of inventory, brought boxes of clothing out to be placed on shelves, and helped customers. She estimated that the boxes she carried weighed 30 to 50 pounds. Id. She worked next as a bookkeeper for the store, a job that sometimes involved taking money down to the registers and bringing other money to the office and it could require carrying 30 pounds or more. AR 38. On a few occasions, she filled in as a cashier or as salesperson. Id.

Plaintiff testified that she did not think she could return to the cashier job she had performed at Farm & Fleet because it required her to be on her feet all day and, as a result, she needed Tylenol when she went home at night. AR 39. She said that her pain and its location varied, depending on what she tried to do: it could be in her neck or in her lower back. AR 39-40. Also, she said she had one or two migraines a month that left her unable to work for two to three days. AR 42.

The ALJ asked the vocational expert, Leida Woodham, what jobs would be available to someone with the residual functional capacity to work at the light exertional level with frequent climbing of ramps and stairs, occasional climbing of ladders, ropes, and scaffolds, frequently balancing, occasional stooping, kneeling, crouching, crawling, occasional work in unprotected heights, occasional work with moving mechanical parts, occasional exposure to extreme cold, and occasional exposure to vibrations. AR 51. The vocational expert testified that a person with those limitations would be able to perform the jobs of cashier/checker, sales attendant, and cashier I, bookkeeper. If the exertional level were reduced to sedentary, with only occasional climbing of ramps and stairs, and no climbing of ladders, ropes, or scaffolds, the individual would be able to perform only the job of cashier I, bookkeeper at the exertional level of sedentary. The expert said that this was the exertional level at which the bookkeeper job is generally performed, rather than at the medium exertional level at which plaintiff had performed it at Farm & Fleet. AR 52-53. . The expert added that if the individual performing the job had to miss work two days a week, that individual would be unable to perform the work.

### F. Administrative Law Judge's Decision

The ALJ found that plaintiff had the severe impairments of degenerative disc disease, bilateral degenerative joint disease of the knees, obesity, migraines, fibromyalgia, and bursitis and that she had not engaged in any substantial gainful activities since her onset date of January 6, 2017. AR 16. He added that plaintiff had the non-severe mental problems of

hypertension, depression, and anxiety, all of which were well controlled by medication. AR 16-17. It was his opinion that plaintiff had the residual functional level to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a), with modification as to climbing and working occasionally at unprotected heights. AR 19. In reaching this opinion, the ALJ considered plaintiff's alleged back and hip impairments, depression and anxiety, obesity, and high blood pressure. He also considered her hearing testimony that she had difficulty turning her neck in any direction, id., as well as her statements that her hip, neck, and back pain varied from day to day. Id. He noted that plaintiff had not had any surgery for her hip, back, neck, or knees. AR 20.

The ALJ took into consideration plaintiff's reports of having one to two migraines a month, her stated inability to function while the migraine lasted, and her exclusive use of Tylenol rather than a designated migraine medication, as well as her taking muscle relaxants when needed and being on medicine for her high blood pressure. AR 20. He observed that, despite plaintiff's complaints of panic attacks, she did not see a mental health counselor for this problem, but took her "mental health medication daily." Id.

The ALJ also reviewed plaintiff's claims of degenerative disc disease and other medical problems. AR 20. He agreed that plaintiff had mild musculoskeletal problems but he found that the record evidence did not substantiate her statements about the intensity, persistence, and limiting effects of these problems. Id. For example, an October 2017 examination of plaintiff's neck had shown that she had a good range of motion both in her neck as well as over her lumbar spine, despite some tenderness in that area, and she demonstrated this by

10

her ability to walk with a steady gait and to get up on her heels and toes and tandem walk. Id. In 2018, she had deep tendon knee and ankle reflexes that were equal and symmetric and her gross strength examination was intact. Id. She took only NSAIDs for her knee pain, id., and she had had injections for her trochanteric bursitis pain on her right and had found them helpful. AR 20-21.

OPINION

Plaintiff believes that the ALJ erred in failing to take into consideration (1) the combination of her migraines and her degenerative disc disease affecting her neck in particular; (2) the combined effect of all of her impairments, including obesity; (3) her subjective symptoms, including symptoms of her depression, anxiety, and panic attacks; and (4) her ability to work as a cashier I bookkeeper and her ability to sit for long periods.

A. Plaintiff's Migraines and Degenerative Disc Disease

The ALJ assessed plaintiff's migraines as a severe impairment but found that they did not impose any work limitations, for three reasons: the record showed that plaintiff had had improvement in her headaches; she used only over-the-counter medications to treat them; and she had fairly normal imaging findings. AR 21. Plaintiff does not disagree with these findings but contends that the ALJ erred because he gave no consideration to the MRI results. (I assume plaintiff is referring to Dr. Nye's January 2019 statement that plaintiff's MRI showed areas that were likely to be chronic, small vessel ischemia, indicating that she

had had migraines.)

Plaintiff did not supply any factual information that would allow an assessment of the significance of her MRI showing. However, as the commissioner points out, the omission is irrelevant in light of plaintiff's testimony that she obtained relief from her headaches by taking nothing more than over-the-counter medications.

Turning to plaintiff's complaints of degenerative disc disease, the ALJ characterized this problem as severe at step two, but found that it did not prevent plaintiff from working. He explained why he found that plaintiff could work a sedentary job despite her complaints that she had neck pain that interfered with her ability to sit, stand, and walk. Despite her asserted limited range of motion of her cervical spine, she had been found to have no associated functional limitation in turning her head. AR 20, citing AR 307.

With respect to plaintiff's complaints that she had other spinal problems, the ALJ relied on Dr. Endres's May 2017 opinion that plaintiff's lumbar and thoracic spine was "overall normal," AR 20, citing AR 1310, with no appreciable acute abnormality of the thoracic or lumbar spine, no acute fracture, or suspicious bony lesion. Id. The ALJ also cited Dr. Damroth's November 2017 finding that plaintiff had tenderness over her sacroiliac joints and her right lumbar spine, but had a good lumbar range of motion. AR 20, citing AR 310. In summary, the evidence does not show that plaintiff's combined complaints of migraines and neck problems would prevent her from performing the cashier I bookkeeping job identified by the vocational expert.

B. <u>Plaintiff's Combined Impairments</u>

Plaintiff contends that the ALJ failed to give due weight to the combined effect of all of her impairments, including her migraine headaches, obesity, fibromyalgia, and her neck, back, hip, and knee pain, all of which she said interfered with her ability to, bend, squat, reach, kneel, climb stairs, concentrate, finish tasks, follow instructions, and handle stress. The record shows that the ALJ did give consideration to all of these alleged impairments but concluded that they did not support plaintiff's claim that she was unable to work at a sedentary level.

The ALJ found at step 2 of his analysis that, in addition to plaintiff's problems of migraines and degenerative disc disease, she had the severe impairments of fibromyalgia, obesity, bursitis, and bilateral degenerative joint disease of the knees. At step 2, a disability claimant can be considered as not suffering from a severe impairment only if the impairment is a slight abnormality having only a minimal effect on the claimant's ability to perform the full range of work-related activities. <u>Chapman v Barnhart</u>,189 F. Supp. 2d 795, 804 (N.D..Ill. 2002).

It is questionable whether the ALJ should have considered plaintiff's claim of fibromyalgia even at step 2 when the record contained no evidence of fibromyalgia confirmed by a medical or osteopathic doctor, <u>Thomas v. Colvin</u>, 826 F.3d 953, 959 (7th Cir. 2016), or confirmed by evidence meeting the diagnostic criteria promulgated by the American College of Rheumatology, and there was no record of the required tender point findings, no evidence that medical doctors had excluded other impairments, and no diagnosis

of fibromyalgia or any related treatment. AR 21. However, even if the ALJ mischaracterized fibromyalgia as severe at step two of his analysis, it does not follow that he is required to find that the impairment would prevent plaintiff from working. He explained at a later step that the evidence did not support a finding that plaintiff's ability to work was significantly limited in any particular way by this impairment: there was no diagnosis that conformed to SSR 12-2p or 96-4p and the record contained no diagnosis or related treatment. AR 21.

In considering plaintiff's complaints of other impairments, the ALJ assessed plaintiff's bursitis, noting that it had been treated with injections of Triamcinolone in May, July and November 2017 because plaintiff had had trochanteris bursitis pain in her right hip. The ALJ found that she had "a remarkably good response" to the injections. In addition, he found that despite plaintiff's bursitis and her spinal and knee degeneration, her "musculoskeltal examinations showed normal, steady gait, and range of motion." AR 21.

Turning to plaintiff's obesity, the ALJ found that her body mass index measured 47.49 in 2017. He found it to be severe because, by itself or in combination with another medically determinable physical impairment, it significantly limited plaintiff's physical ability to do basic work activities. SSR 02-01. AR 19.

The ALJ took into account plaintiff's bilateral degenerative joint disease of the knees, noting that her doctors had found that plaintiff's deep tendon knee and ankle reflexes were equal and symmetric and her gross strength exam was intact. AR 20. She had osteoarthritis, for which she was prescribed NSAIDs. The ALJ also considered plaintiff's statements that she had back, neck, and hip impairments for which she underwent trigger point injections

that were of some help for a few days at a time, that her hip, neck, and back pain varied from day to day, AR 19-20, and that she had not had any surgery for the pain or for the knee problems she claimed. AR 20. The ALJ explained that his residual functional capacity assessment was supported by the record evidence that included imaging of plaintiff's spinal and knee degeneration, consideration of her exertional and postural limitations, and consideration of her obesity, migraines, and fibromyalgia. AR 22. He concluded that when all of plaintiff's impairments were considered together, they would not prevent her from performing her past work as a cashier I, bookkeeper, if she performed it as a sedentary occupation, not as she had performed it previously when she worked at Farm & Fleet.

In reaching his finding, the ALJ also took into account the opinions of two Disability Determination Services' doctors, Dr. Pat Chan and Dr. Sai Nimmagadda, that plaintiff was capable of performing "light work," which is more strenuous than sedentary. Dr. Chan found that plaintiff could do the full range of such work; Dr. Nimmagadda added a few restrictions, such as limiting plaintiff to only frequently climbing ramps/stairs, balancing, kneeling, crouching, crawling and occasionally climbing ladders/ropes/scaffolds.

### C. Plaintiff's Subjective Mental Health Symptoms

Plaintiff reported battling depression and anxiety and said she needed reminders to take her medications and perform personal care. The record shows that these problems were generally addressed successfully with Citalopram, and the ALJ found that these impairments did not cause more than minimal limitations in her ability to perform basic mental activity

and were therefore non-severe. This finding was supported by APNP Weise's January 2018 report that plaintiff had asked for a decrease in the medicine she was taking for depression after her symptoms had improved. AR 17, citing AR 347. Finally, plaintiff has referred to sleep apnea at several places in the record but she has never claimed that this is a current impairment.

### D. Cashier I Bookkeeper Job

At her hearing before the ALJ, plaintiff testified that she would be unable to return to her last job as a cashier because doing so would require her to be on her feet all day, which she could not manage. The vocational expert took this testimony into account when she concluded that someone with plaintiff's residual functional capacity could perform the position of cashier I (bookkeeper), which would not require her to be on her feet more than two hours a day and is rated as "sedentary" by the Social Security Administration. The vocational expert agreed that plaintiff would be unable to perform the bookkeeper job as she had at Farm & Fleet, where she had been required to go up and down stairs to take coins and cash to other areas of the store. The expert classified the Farm & Fleet job as being medium, whereas the bookkeeper job she identified would accommodate plaintiff's physical restrictions, requiring six hours of sitting and two hours of walking, with only occasional climbing of ramps and stairs, and no climbing of ladders, ropes, or scaffolds. AR 52-53. (There is no indication that such a job would require plaintiff to walk for two hours at a time.) The ALJ adopted the vocational expert's opinion.

Plaintiff believes that the ALJ erred in adopting the opinion he did because he did not explain how plaintiff would be capable of performing a sedentary job when she could sit for only about 30 minutes at a time before having to stand up. However, plaintiff has no medical evidence to support her claim that she had sitting problems. Her only support for her claims came from (1) her own hearing testimony before the ALJ; (2) her own statements on a function report she filed with the SSA, AR 207-15, 253, 255, 262; (3) her answers to two pain questionnaires, AR 367-79, 1254; and (4) the reports of her sitting problems that she and one of her sisters compiled. AR 244, 249. The record does not include any medical opinion that plaintiff had sitting problems and thus falls short of proving plaintiff's assertion that she was unable to sit for more than 30 minutes or stand for more than 15. Rice v. Barnhart, 384 F.3d 363, 371 (7th Cir. 2004) ("medical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints"). See also Eichstadt v. Astrue, 564 F.3d 663, 668 (7th Cir. 2020)("claimant bears the burden of producing medical evidence that supports her claim of disability").

In summary, plaintiff has not shown that any medical professional assessed greater restrictions on her physical and mental capacity than those assessed by the ALJ and that the restrictions would not prevent her from working at the sedentary task of cashier1 (bookkeeper). Accordingly, the commissioner's decision to deny plaintiff's claim for Social Security benefits will be affirmed.

ORDER

IT IS ORDERED that the decision of Andrew Saul, Commissioner of Social Security, is AFFIRMED and plaintiff Cynthia Lynn Gustafson's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 20th day of April, 2021.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge